**AFFIDAVIT PURSUANT TO W. Va. Code § 23-4-2**
**STATE OF WEST VIRGINIA,**
**COUNTY OF KANAWHA, to-wit**

I, Vahid Ebadat, PH.D., M.Inst.P, C.Phys, hereby affirm and say as follows:

1. I earned a Bachelor of Science in Electrical Engineering at Southampton University (U.K.), in 1985 and a Doctorate of Philosophy at Southampton University (U.K.), 1989 focusing on Electrostatic Hazards Associated with Pneumatic Conveying and Storage of Powders.

2. I am President of Stonehouse Process Safety, Inc. I have worked extensively as a process safety consultant for the chemical, pharmaceutical, food, paper/wood, and other process industries globally for over 30 years. I have published many articles and papers on safety and am regular speaker on process safety topics, including dust explosion, static electricity, gas & vapor flammability, and thermal decomposition/self-heating hazard assessment and control.

3. I am a principal member of National Fire Protection Association (NFPA) technical committee on Static Electricity safety (NFPA 77) and technical committees on safety standards for Combustible Dusts and Particulate Solids (NFPA 652, 654 and 660) and a member of American Society for Testing and Materials (ASTM) Committee E-27 on Hazard Potential of Chemicals. Part of my tasks on the NFPA committee is to participate in the drafting, review, revision and updating of safety standards for combustible dust and static electricity.

4. I have taught numerous classes on hazards of and safety for combustible dust and static electricity.

5. As part of my work in the field of combustible dust and static electricity safety, I have performed numerous dust fire and explosion and static electricity hazards analysis and investigated many fires and explosions caused by combustible dust and static electricity.

6. Among other things, I am an expert in the field of combustible dust and static electricity safety hazards and applicable safety standards which include NFPA, OSHA and other safety standards and recognized and generally accepted good engineering practices.

7. I have been recognized by Courts in the United States as an expert in the field of combustible dust and static electricity safety because of my education, knowledge, training and experience in that field.

8. I have spoken with counsel and with Christopher Goode concerning the underlying facts leading to his injury sustained on or about October 4, 2023. Additionally, I have had access to the following documents and have reviewed many:

   - Injury Photos and Videos
   - Site Photos and Videos
   - News Articles
   - West Virginia Secretary of State - Business Organization Detail – Far East International, LLC

1

- West Virginia Fire Code, Effective 2022
- Witness Interviews APG Polytech
- Interviews: 10/12/23
- APG Polytech IPA Railcar Unloading Procedures 1/6/15
- APG Polytech Procedure for Loading Railcars 3/9/21
- APG Polytech CP3 TPA Railcar Unloading Procedure 9/29/22
- APG Polytech CP4 TPA Railcar Unloading Procedure 10/6/23
- APG Plant Health and Safety Committee Meeting Reports for 5/17/23; 7/18/23; 9/27/23; and 11/8/23 – Accident Incident Review
- USDOL Letter Dated 10/4/23 re: OSHA Activity No 208895
- APG Training Delivered by Employee – Christopher Goode
- Alpek MSDS TPA
- CP-3/CSS 10 & 11 Area Classification Site Plan
- CP-3/CSS 10 & 11 Area Classification
- Combustible Dust Controls – Course Materials
- OSHA - Combustible Dust: An Explosion Hazard
- CP3 TPA Railcar Unloading Procedure
- General Operator Building 55/66 Operations Certification; 4/29/23
- ERIKS North America – Hose and Hose Accessories Distribution Invoice; 11/3/20; 7/20/21;
- General Operator Building 55/66 Operations Certification
- Handwritten Statement of Austin Liptrap
- Handwritten Statement of Travis Wamsley
- Handwritten Statement of Joe Leach
- Handwritten Statement of Jim Hedden
- Handwritten Statement of Wayne C
- Handwritten Statement of Caleb Riffle
- Handwritten Statement of Dillon Green
- NIH on TPA
- OSHA 3000
- 3M Safety Data Sheets
- US Department of Labor OSHA Formal Settlement Agreement
- Daily Activity Report – 10/3/23
- US Department of Labor Document/Information Request 10/26/23
- US Department of Labor Citation and Notification of Penalty 3/4/24
- US Department of Labor Notice to Employees of Informal Conference 3/4/24
- US Department of Labor OSHA Invoice/Debt Collection Notice 3/4/24

9. Based upon my review of the referenced documents and my interview with Mr. Goode, I am knowledgeable about the facts and circumstances surrounding Mr. Goode's injury. Based on my education, training and experience, I am acutely qualified to identify the unsafe working conditions that existed at APG on October 4, 2025, and the specific safety standards violated by APG.

10. As a workplace in West Virginia manufacturing polymer, APG is and was required to comply with specific and applicable federal occupational safety regulations that are applicable to its work. Additionally, APG is and was required to comply with the National Fire Protection

2

Association's safety codes and standards because they were adopted as part of West Virginia's fire code in WVCSR 87-1 (2022).

11. The evidence shows that on and before October 4, 2023, APG Polytech manufactured polymer and plastic at its plant in Apple Grove, West Virginia. The manufacture of polymer at APG's plant required the purchase, delivery, handling, storage, and use of terephthalic acid (TPA), as an ingredient. The TPA in use at the Defendants' plant was in the form of powder or dust. TPA is a white powdery substance that presents fire, flash fire and explosion hazards when ignited thereby exposing the APG Defendants' work force to a high risk of serious injury or death when applicable safety rules are not followed.

12. TPA was regularly delivered to APG's Apple Grove, West Virginia plant by railcar. When it arrived at the Defendants' Apple Grove, West Virginia plant, valves or doors on the bottom of the railcars would be opened and the TPA would be transferred from inside the railcar to underground storage tanks situated immediately below the railroad tracks.

13. For a long time and immediately before Mr. Goode's injury, APG regularly and repeatedly spilled large amounts of TPA underneath the railcars because of failing and inadequately maintained transfer equipment. The spillage and accumulation of excessive and dangerous amounts of combustible TPA dust and non-conductive and ungrounded hoses exposed APG's workers to static electricity shocks and a high risk of serious injury or death from fires, flash fires, and burns.

14. In consideration of the ongoing spillage, APG assigned Mr. Goode and other employees with the work task of vacuuming, cleaning and removing the spilled TPA underneath railcars with the use of a Hi-Vac Industrial Vacuum and connected hoses. This task required workers to crawl underneath the rail cars to access TPA spills.

15. On or about October 4, 2023, as Mr. Goode was cleaning and vacuuming spilled TPA underneath a railcar with the Hi-Vac Industrial Vacuum with its unsafe and ungrounded hoses, a discharge or spark of static electricity ignited an explosible cloud of powder TPA engulfing the plaintiff's entire body in flames. An emergency shower was near but newly constructed piping blocked Mr. Goode's access to the shower. Mr. Goode then attempted to use the next closest emergency shower, but its controls were not visible, and Mr. Goode had not been trained on their location and use. Finally, Mr. Goode found the third closest shower inside the plant and his burning body was extinguished.

16. On October 4, 2023, and for a long time before Mr. Goode's injury, APG exposed Mr. Goode and others at its Apple Grove, West Virginia plant to a high risk of serious injury or death from fires, flash fires, static electricity discharges and burns because many specific unsafe working conditions related to combustible dust existed there. The specific unsafe working conditions that APG exposed Mr. Goode and others to are as follows:

    a. APG failed to perform the following activities:

        1. Determining the combustibility and explosibility hazards of materials;
        2. Identifying and assessing any fire, flash fire, and explosion hazards, i.e., performing a dust hazards analysis (DHA);

3

      3. Managing the identified fire, flash fire, and explosion hazards; and
      4. Communicating the hazards to affected personnel:
- Employees, contractors, temporary workers, and visitors shall be included in a training program according to the potential exposure to combustible dust hazards and the potential risks to which they might be exposed or could cause.

b. APG failed to acquire, maintain and operate their vacuum system and its associated hoses and parts in a safe condition and manner because they were not conductive or static dissipative, and grounded.

c. APG failed to acquire and maintain their vacuum system and its associated hoses and parts in a safe condition because they did not follow industry safety standards to adequately ground them or to otherwise take measures to prevent the accumulations of hazardous levels of static charges, and creation of incendive static electricity discharges from its vacuum equipment.

d. APG failed to implement and follow a health and safety plan to prevent fires and flash fires resulting from the ignition of TPA combustible dust.

e. APG failed to conduct mandatory assessments of the areas of TPA usage and spillage in order to properly analyze the hazards under the National Fire Protection Association ("NFPA") and to follow the safety standards associated with such a classification.

f. APG failed to conduct mandatory assessments to determine what safety equipment and personal protective equipment was necessary for workers working in areas of TPA spillage and for vacuuming TPA.

g. APG chose not to inform and educate workers on the explosive and combustion hazards associated with the use of TPA nor were signs or material safety data sheets posted or available in or near the location where TPA was used.

h. APG failed to conduct regular inspections of the hoses used with the Hi-Vac Industrial Vacuum to identify unsafe conditions and to repair or replace hoses used with the vacuum.

i. APG misused its Hi-Vac Vacuum system in that the hoses they used were not designed or intended to be used with an industrial vacuum and were not conductive or static dissipative and were not properly grounded.

j. APG failed to provide and require the use of proper personal protective equipment including flame retardant clothing and static dissipative safety footwear.

k. APG failed to charge their fire extinguishers and failed to provide accessible eye baths and emergency showers and to train their workers in their use.

17. Each of these specific unsafe working conditions were violations of specific state and/or federal safety laws that were specifically applicable to APG's industry and the work Mr. Goode was performing at the time of his injury. The specific safety laws and standards include but are not limited to the following:

West Virginia Fire Code 87CSR1, Section 87-1-2, 2.1, **03/09/2022,**

**NFPA 1, 2021 Edition**

NFPA 1-40.1 et seq.,
NFPA 1-40.1.1

NFPA 1-40.3
NFPA 1-40.3.1

NFPA 1-40.4

NFPA 1-40.5 et seq.
NFPA 1-40.5.1.1.1
NFPA 1-40.5.1.1.2
NFPA 1-40.5.1.2
NFPA 1-40.5.2. et seq
NFPA 1-40.5.3 et seq.
NFPA 1-40.5.3.1
NFPA 1-40.5.3.3.1
NFPA 1-40.5.3.4

NFPA 1-40.6 et seq.
NFPA 1-40.6.1
NFPA 1-40.6.2
NFPA 1-40.6.3

NFPA 1-40.7 et seq.
NFPA 1-40.7.2.1.2
NFPA 1-40.7.2.1.3
NFPA 1-40.7.2.2 et seq.
NFPA 1-40.7.2.2.1.3
NFPA 1-40.7.2.2.1.4.
NFPA 1-40.7.2.2.1.6
NFPA 1-40.7.2.2.1.7
NFPA 1-40.7.2.2.2

NFPA 1-40.9 et seq.

NFPA 1-40.11 et seq.

**NFPA 652, 2019 Edition**

NFPA 652-4 et seq.
NFPA 652-4.1
NFPA 654-4.2
NFPA 652-4.2.1.2
NFPA 652-4.2.5

NFPA 652-5 et seq.
NFPA 652-5.1
NFPA 652-5.1.1
NFPA 652-5.1.2

NFPA 652-5.4.4 et seq.
NFPA 652-5.4.4.1

NFPA 652-7 et seq.
NFPA 652-7.1.1
NFPA 652-7.1.1.1
NFPA 652-7.1.1.2
NFPA 652-7.2 et seq.
NFPA 652-7.2.1
NFPA 652-7.2.2
NFPA 652-7.2.3
NFPA 652-7.3 et seq.
NFPA 652-7.3.1
NFPA 652-7.3.3.1

NFPA 652-8 et seq
NFPA 652-8.3.1
NFPA 652-8.3.2
NFPA 652.8.3.2.1
NFPA 652-8.3.3
NFPA 652-8.4.2.2
NFPA 652-8.4.2.2.1.3
NFPA 652-8.4.2.2.1.4
NFPA 652-8.4.2.2.1.7
NFPA 652-8.4.3 et seq.
NFPA 652-8.4.6.1
NFPA 652-8.6 et seq.
NFPA 652-8.7 et seq.
NFPA 652-8.7.1 through 6
NFPA 652-8.8 et seq.
NFPA 652-8.8.1 et seq.
NFPA 652-8.8.2 et seq.
NFPA 652-8.8.2.1
NFPA 652-8.8.2.2
NFPA 652-8.84

NFPA 652-9 et seq

NFPA 652-9.3.3.4
NFPA 652-9.3.3.4.3
NFPA 652-9.3.3.4.4
NFPA 652-9.4.7.3

**NFPA 654, 2020 Edition**

NFPA 654 et seq.

NFPA 654-7.1.1
NFPA 654-7.1.1.1
NFPA 654-7.1.1.2
NFPA 654-7.1.1.3
NFPA 654-7.1.2

NFPA 654-8.4.3.7

NFPA 654-9.3.3.2.7.3

**NFPA 77, 2019 Edition**

NFPA 77-6 et seq.
NFPA 77-6.1,
NFPA 77-6.8.4,

NFPA 77-8.2 et seq.
NFPA 77-8.2
NFPA 77-8.2.1
NFPA 77-8.2.2
NFPA 77-8.2.3
NFPA 77-8.2.4

NFPA 77-15.8 et seq.
NFPA 77-15.8.1.
NFPA 77-15.8.2,
NFPA 77-15.8.3

29 CFR 1910.157
29 CFR 1910.22
29 CFR 1910.145
29 CFR 132
29 CFR 1910.303(b)(1)
29 CFR 1910.39 of
29 CFR 1910.39
29 CFR 145;

OSHA Combustible Dust National Emphasis Program CPL 03-00-008

7

18. APG Plant Health and Safety Committee Meeting records in May, July and September 2023 reflect APG's knowledge that its vacuum system and its related parts and hoses were unsafe, not grounded and not adequately maintained and that their continued use of the unsafe equipment and hoses exposed workers to a high risk of serious injury or death from flash fires and the ignition, combustion and explosion of TPA. In particular, the records state the hoses are "old and worn out to the point they are starting to build up static."

19. Despite their knowledge of the unsafe conditions described herein, APG decided to continue using the unsafe equipment and allowed these unsafe conditions to remain unabated and work procedures were not changed for the protection of the safety and lives of its workers. Instead, APG continued to assign Mr. Goode and other workers to work with the same unsafe equipment by its unsafe work methods exposing Mr. Goode and others to a high risk of serious injury or death as described herein.

20. Following Mr. Goode's injury, the United Steelworkers investigated Mr. Goode's injury. Witness statements taken in this investigation confirm that before Mr. Goode's injury, many workers informed APG management personnel of the unsafe condition of its vacuum system and related parts and hoses and of the high risk of serious injury or death to which APG's workers were being exposed. These complaints included the unsafe and ungrounded condition of the defendants' vacuum system and hoses, electrostatic discharges and shocks suffered by their workers.

21. Following Mr. Goode's injury, the United States Department of Labor, Occupational Safety and Health Administration ("OSHA") conducted an investigation of the incident. Among other issues OSHA reached these conclusions surrounding the defendants' dangerous work practices and the location of the plaintiff's injury:

> a. "The employer did not furnish employment and a place of employment which were free from recognized hazards that caused or were likely to cause death or serious physical harm in that employees were exposed to combustible dust explosion, deflagration, and other fire hazards when using and/or working near an industrial vacuum system."

> b. On September 22, 2023, September 28, 2023, "October 4, 2023, and times prior, employees used a stationary industrial vacuum system to vacuum large amounts of powdered TPA that had spilled out onto the floor under a railcar due to a malfunction during download. The vacuum hoses were connected with duct tape, one section of connected hose was not made of static dissipative material and hoses were not grounded and bonded causing an electrostatic discharge and employees to be shocked, exposing them to explosion and fire hazards."

> c. Among other methods, one feasible and acceptable method to correct this hazardous condition would be to follow NFPA 654 Standard for the Prevention of Fire and Dust Explosions from the Manufacturing, Processing and Handling of Combustible Materials."

8

d. "On or about October 12, 2023 and times prior, combustible dust covered electrical conduit, receptacles, mechanical equipment and other horizontal surfaces, exposing employees to flash fires and explosion hazards."

e. "On or about October 12, 2023 and times prior, the employer did not keep the floor of the work area free from hazardous accumulations of combustible dusts, exposing employees to flash fires and explosion hazards."

f. "On or about October 11, 2023 and times prior, the employer did not make sure safety signs were installed at the north and south entrance points to inform employees of the explosive hazards associated with TPA and the work being performed in the building." OSHA issued the same violation again on November 14, 2023, when it found the defendants again were not in compliance.

g. "On or about October 12, 2023 and times prior, the employer did not provide or require the use of flame retardant and non static generating clothing necessary to protect employees from burns due to flash fires and/or explosions when working in areas where combustible dusts are present."

22. As a result of OSHA's investigation of the plaintiff's injury, OSHA issued citations to and fined the defendant APG Polytech for its violation of mandatory occupational safety laws which included 29 CFR 1910.22, 29 CFR 1910.132, and 29 CFR 1910.145 as well as Section 5(a)(1) of the Occupational Safety and Health Act. To abate these hazards, APG agreed to hire a competent safety professional and to create a health and safety program. Additionally, APG agreed to perform daily inspection of locations with combustible dust and to install signs to warn workers of the combustible dust hazards.

23. The specific unsafe working conditions described herein collectively and independently caused Mr. Goode's severe injuries.

24. The opinions expressed herein are stated to a reasonable degree of certainty within my fields of expertise.

25. The opinions expressed herein are based wholly on materials available to me at the time I performed my review of this matter.

26. I reserve the right to review any document that may later be generated and/or supplied to me, and to supplement or amend the opinions herein as may be appropriate in my professional opinion.

Further this affiant sayeth naught.

_____
Vahid Ebadat, PH.D.,

9

Taken, subscribed, and sworn to before me this __19th__ day of September, 2025.

_____
NOTARY PUBLIC

My commission expires: __April 22, 2030__

*[Notary Seal: JEAN SAMUEL EMILE, NOTARY PUBLIC, NEW JERSEY, COMM. EXP. APRIL 22, 2030]*

10